IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERIC BROWN,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | No. 3: 25-CV-1890-N-BW |
| UNITED STATES OF AMERICA<br>　　　　Defendant. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Geric Brown, proceeding pro se, initiated this action on July 21, 2025 and paid the filing fee. (*See* Dkt. Nos. 1, 3.) Brown asserts a claim against the United States under 28 U.S.C § 1346(a)(1) alleging that he is owed an income tax refund that has not been paid. (Dkt. No. 3.) This action was referred to the undersigned magistrate judge for pretrial management and recommendation on claim-dispositive matters pursuant to 28 U.S.C. § 636(b) and Special Order No. 3-251. (*See* Dkt. No. 1.)

On December 10, 2025, the undersigned issued an Order to Show Cause with Respect to Jurisdiction. (Dkt. No. 22.) Brown was ordered to file a written response explaining the basis of the Court's jurisdiction. (*See id.*) He did so on January 13, 2026. (*See* Dkt. No. 29.) The United States filed its response on February 2 (Dkt. No. 32), and Brown filed a reply on February 10 (Dkt. No. 33).

1

Having considered the briefs and the relevant law, the undersigned recommends, for the reasons set out below, that the Court dismiss this lawsuit for lack of subject-matter jurisdiction.

## I. BACKGROUND

Brown alleges in his complaint that he filed a Form 1040, U.S. Individual Income Tax Return, for tax year 2023, requesting a refund of $20,249. (Dkt. No. 3.) The Internal Revenue Service ("IRS") issued a letter indicating that the refund would be mailed to Brown, but he never received the refund. (*Id.*) Brown further alleges that he has made "multiple attempts to resolve this matter, including contacting the IRS directly and submitting Form 911 to the Taxpayer Advocate Service." (*Id.*) According to Brown, he used this same method for tax year 2024 and received a refund without issue, apparently to highlight the "unjustified delay" of the 2023 refund. (*Id.*) Brown contends that as of the date of filing his complaint, he has "exhausted all reasonable administrative remedies" through the IRS. (*Id.*)

The Government argues in response that although Brown filed an original Form 1040 for tax year 2023 requesting a refund of $20,249, he only reported $5 of income on line 1a of his Form 1040, which requires taxpayers to report the total amount from Forms(s) W-2, Wage and Tax Statement. (Dkt. Nos. 32, 32-1 Ex. A.) According to the IRS, Brown failed to report wages of $126,532.89, as shown on his Form W-2 for 2023 from Grocery Delivery E-Services USA Inc, and therefore, his tax was incorrectly assessed as zero. (Dkt. Nos. 32, 32-1. Ex. B.)

2

The Government explains that an IRS representative discovered the discrepancy on Brown's 2023 tax return where the tax was assessed as zero and initially suspended Brown's tax refund module on March 29, 2024, but the representative released the suspension upon being told that the "IRS Automated Underreporter Program would scoop it up [pick it up for audit]. [Brown's] refund claimed on his Form 1040 for tax year 2023, however, remained frozen." (Dkt. No. 32-2 ¶ 7.) (*Id.*)

Thereafter, by notice dated April 15, 2024, the IRS informed Brown that, "Your refund check will be sent to you by mail." (*Id.* at ¶ 8.) After not receiving a refund, Brown called the IRS on July 5, 2024 to inquire about his refund. (*Id.* at ¶ 9.) An IRS representative advised Brown to send a complete Form 1040 with all schedules and attachments, including Forms W-2, to the IRS Fresno campus to resolve the freeze on the claimed refund. (*Id.*) On July 12, 2024, the Fresno campus received a copy of Brown's 2023 tax return, wherein he reported $5 as the total amount from his Form W-2, along with his Form W-2 for tax year 2023 showing he had actually received wages of $126,532.89 from Grocery Delivery E-Services. (*Id.*)

On December 10, 2025, the Court ordered Brown to show cause why this action should not be dismissed for lack of jurisdiction. In response to the Court's order to show cause with respect to jurisdiction (*see* Dkt. No. 22), Brown merely reiterated his contention that the Court has original jurisdiction under 28 U.S.C. § 1346(a)(1) because it is a civil action against the Government for a tax refund that he has not received. (*See generally* Dkt. No. 29.)

3

On February 2, 2026, the Government filed a brief and supporting exhibits contending that the Court lacks subject matter jurisdiction because Brown failed to file a proper and timely claim for refund as required by 26 U.S.C. §§ 7422(a), 6511(A), 6532(a)(1) and Trea. Reg. §§ 301.6402-2, 301.6402.3.  (*See* Dkt. No. 32.)  Thereafter, on February 10, 2026, Brown filed a reply merely persisting in his contention that the Court has jurisdiction under 28 U.S.C. § 1346(a)(1), because he filed a valid income tax refund claim which the IRS accepted and because a subsequent year's return was filed in the same manner.  (*See* Dkt. No. 33 at ECF p. 2-3.)  He also argues—citing no authority—that "wage discrepancies do not render a return invalid."  (*Id.* at ECF p. 3.)

## II.  LEGAL STANDARDS

The Court is required to consider, sua sponte if necessary, the basis of its jurisdiction.  *Giannakos v. M/W Bravo Trader*, 762 F.2d 1295, 1997 (5th Cir. 1985).  "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998) (internal quotation marks removed) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  The Court will not assume it has jurisdiction.  Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established

4

argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

And where, like here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively "facial," and the Court need look only to the sufficiency of the allegations of the plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).

Under the doctrine of sovereign immunity, the Government cannot be sued unless it has consented to suit. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Accordingly, "[a] plaintiff may only sue the Government if a federal statute explicitly provides for a waiver of sovereign immunity." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012).

With respect to taxpayer suits against the IRS, Section 1346(a)(1) "operates in conjunction with 28 U.S.C. § 7422 to provide a waiver of sovereign immunity in tax refund suits only when the taxpayer has fully paid the tax and filed an administrative claim for a refund." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994); *see also Fletcher v. United States*, 452 F. App'x 547, 552-53 (5th Cir. 2011). After filing the

claim for refund, a taxpayer must allow six months to elapse before commencing an action in district court, unless the IRS renders a decision on the claim within that time.  U.S.C. § 6532(a)(1).  "Unless these requirements are met, a refund suit may not be maintained."  *Hamzik v United States*, 64 Fed. Cl. 766, 766 (2005).

### III.  ANALYSIS

Related to his tax year 2023 refund, Brown contends that the Court is granted jurisdiction over his claim by 28 U.S.C. § 1346(a)(1).[1]  The government argues otherwise, stating that Brown's failure to meet the statutory prerequisites for bringing a tax refund action in district court does not establish that a waiver of sovereign immunity.  (*See* Dkt. No. 32.)  Brown's reply brief of five bare-bones points, with his "argument" section totaling seven sentences.  (*See* Dkt. No. 33.)  Notably, Brown does not dispute that his wages in 2023 wages totaled $126,532.89, which he did not report on his Form 1040.  In Brown's view, he filed a valid return and requested a refund, so "[a]ll administrative prerequisites are met."  (*See* Dkt. No. 33 § III-E.)  Despite his claims, however, Brown fails to demonstrate that he filed a *proper* and timely claim for refund as required under 28 U.S.C. § 1346(a)(1).  Therefore, this Court lacks subject-matter jurisdiction over Brown's claim for a tax refund.

---

[1] 28 U.S.C. § 1346(a)(1) provides that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny civil action against the United States for recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]"

A plaintiff establishes a waiver of sovereign immunity in tax refund suits under 28 U.S.C. § 1346(a)(1) when, operating in conjunction with 28 U.S.C. § 7422,[2] "the taxpayer has fully paid the tax and filed an administrative claim for a refund." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994); *see also Fletcher v. United States*, 452 F. App'x 547, 552-53 (5th Cir. 2011). Here, Brown failed to file a proper and timely claim for refund as required by 26 U.S.C. § 7422(a), § 6511(a), § 6532(a)(1), and Treas. Reg. § 301.6402-2; § 301.6402-3. Other than the original Form 1040 (which Brown does not dispute failed to report all income), Brown does not allege that he filed any other document constituting a refund claim. (Dkt. No. 33.) Further, the IRS has no record of Brown filing a form 843, Claim for Refund and Request for Abatement, for tax year 2023. (Dkt. No. 32-2 at ¶ 5 - 6.)

Although Brown claims in his tax return that he is owed $20,249, his return does not qualify as a claim for refund because it was not a properly executed return. *See* 26 C.F.R. § 301.6402-3(a)(5). While an original tax return may constitute a claim for refund, it must be properly executed. "A properly executed individual . . . original income tax return . . . shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return if it contains a statement setting forth the amount determined as an

---

[2] 28 U.S.C. § 7422(a) states, "No suit for proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

overpayment and advising whether such amount shall be refunded to the taxpayer[.]" 26 C.F. R. §301.6402-3(a)(5).

"A broad constellation of cases has held that a return which lacks essential financial information, and, in particular, contains no recitation of taxpayer's income, is not a properly executed return for purposes of the tax laws." *Hamzik*, 64 Fed. Cl. at 767-68; *see Reinhart v. United States*, No. EP-04-CA-4-DB, 2004 WL 1950335, at *2 (W.D. Tex. Sept. 2, 2004) ("[D]efendant avers that Plaintiff's Form 1040A for 2001 claiming a refund based on the assertion that he had 'zero' in income or wages for 2001 was not a reasonable attempt to comply with the Internal Revenue code or relevant common law. The Court agrees."). "[I]t is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code. . . . In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information." *United States v Mosel*, 738 F.2d 157, 158 (6th Cir. 1984) (quoting *United States v Moore*, 627 F.2d 830, 835 (7th Cir. 1980)).

As noted above, Brown asserted on his 2023 tax return that he received only $5 in wages, but he actually received $126,532.89. (*See* Dkt. No. 32-1 Ex. A, Ex. B.) Brown's return cannot constitute a reasonable or honest attempt to supply the information required by the tax code. *See Mosel*, 783 F.2d at 158. As such, Brown's 2023 tax return was not a properly executed return and does not constitute a claim for refund. Accordingly, the Court lacks subject matter jurisdiction. *See* 26 C.F. R. § 301.6402-3(a)(5). Absent a valid refund claim, the Court has no jurisdiction to hear

Brown's tax-refund action, so Brown's failure to satisfy the statutory prerequisites for bringing a tax refund action in district court requires that this case be dismissed. *See Reinhart*, 2003 WL 1950335, at *3.

Brown's reply brief (Dkt. No. 33) does not alter this conclusion. While Brown divides his argument section into five subheadings, his arguments essentially rely on two basic contentions: (1) his return satisfies the statutory requirements for filing a valid tax return, and (2) that the IRS treated his return as valid. (*See id*.) As to the first contention, Brown asserts that his Form 1040 included the information necessary to satisfy "All Beard Requirements," but he fails to cite any legal authority in support of this assertion. (*See id*. at ECF p. 2.) To the extent that Brown is referring to *Beard v. Commissioner*, 82 T.C. 766, 1984 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986), the four-part test articulated in that case requires that a valid return must: (1) contain sufficient data to calculate the taxpayer's tax liability; (2) purport to be a return; (3) represent an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) be executed under penalties of perjury. *Id*. at 777.

Despite Brown's conclusory contention that his 2023 Form 1040 meets these requirements, Brown provides no further analysis and does not explain how his Form 1040 satisfies any of these elements. Most notably, Brown provides no explanation for how his unreported income of $126,532.89 for the 2023 tax year could possibly meet the requirements of providing sufficient data to calculate his tax liability or constitute an honest and reasonable attempt to satisfy the requirements of the tax law. (*See* Dkt. No. 33; *but see* Dkt. No. 32-1.) Contrary to his claim that

incorrect income does not render a tax return invalid (*See* Dkt. 32 at ECF p. 3), the discrepancy between the $5 Brown reported as income and the $126,532.89 reflected on his form W-2 cannot be dismissed as a minor computing error or good-faith mistake; it may be a deliberate underreporting of income that renders his Form 1040 deficient under *Beard*. *See, e.g.*, *Reinhart*, 2004 WL 1950335; *Ya Glob. Invs. v. Comm'r*, 161 T.C. 173 (2023) (rejecting a return reporting all zeros as failing to constitute an honest and reasonable attempt to satisfy tax law requirements).

As to the second contention, Brown asserts that the IRS's communication with him and acceptance of his subsequent year's refund proves the filing method was "valid and compliant." (Dkt. No. 33 ¶ II(B)-(C).)  Nothing supports that assertion.  Additionally, Brown simply states "Plaintiff satisfied § 7422(a)."  Bare assertions, unsupported by citation to legal authority or any plausible explanation, are insufficient to carry Brown's burden to establish jurisdiction.  None of Brown's arguments, individually or collectively, overcome the fundamental defect: he did not file a proper and timely refund.  Because Brown has failed to demonstrate that he satisfied the statutory perquisites for bringing a tax refund action, this Court lacks subject matter jurisdiction, and this case must be dismissed.

### IV.  LEAVE TO AMEND

The Fifth Circuit instructs courts to give pro se plaintiffs an opportunity to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  District courts therefore

typically allow pro se plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

The Court may deny leave to amend only when there is substantial reason to do so. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). Factors to consider when deciding whether to grant leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* at 598. Granting leave to amend is futile when the amended complaint would fail to state a claim upon which relief could be granted. *See, e.g., Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000); *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or . . . [plaintiffs] are unwilling or unable to amend in a manner that will avoid dismissal." (internal citations omitted)).

The Court, however, need not grant leave to amend "'if the plaintiff has already pleaded his best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Here, Brown has been given opportunities to plead his best case—his complaint (Dkt. No. 3), his response to the show cause order (Dkt. No. 29), and his reply to the Government's response (Dkt. No. 33)—and it is clear that no amendment to Brown's

complaint can remedy the lack of jurisdiction.  That is so because the deficiency lies not in the pleading itself, but in Brown's failure to satisfy the statutory prerequisites for bringing a refund suit.  Because these deficiencies cannot be cured by amending his complaint, allowing Brown to amend would be futile.  *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("[J]udges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)).

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court dismiss this lawsuit without prejudice for lack of subject-matter jurisdiction.

**SO RECOMMENDED** on April 3, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

13